# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID ROGERS and OPTION-X, LLC | : |
| Plaintiffs, | : |
| v. | : 3:16-CV-00137 |
| | : (JUDGE MARIANI) |
| GENTEX CORPORATION, | : |
| Defendant. | : |

## MEMORANDUM OPINION

Presently before the Court is Plaintiffs David Rogers and Option-X LLC's Motion for Preliminary Injunction. (Doc. 42). For the reasons that follow, Plaintiffs' Motion will be denied.

### I.   INTRODUCTION AND PROCEDURAL HISTORY

On January 26, 2016, Plaintiffs filed a Complaint against Defendant Gentex Corporation. (Doc. 1). In the Complaint, Plaintiffs asserted the following causes of action: (1) Breach of Contract/Stock Purchase Agreement (Count I); (2) Breach of Contract/Employment Agreement (Count II); (3) Declaratory Judgment (Count III); and (4) Violation of Pennsylvania Wage Payment & Collection Law (Count IV). (*Id.*). Defendants moved to dismiss the Complaint on March 4, 2016. (Doc. 23). Thereafter, Plaintiffs filed an Amended Complaint, asserting three additional causes of action: (1) fraudulent misrepresentation (Count V); (2) negligent misrepresentation (Count VI); and (3) fraud (Count VII). (Doc. 32).

Defendants thereafter moved to dismiss the Amended Complaint on April 18, 2016. (Doc. 34).

On June 29, 2016, Plaintiffs moved for a preliminary injunction. (Doc. 42). In their Motion, Plaintiffs request that the Court permit them "to operate a business that does not compete with that of Gentex Corporation ("Gentex") under the terms of the relevant restrictive covenants." (Doc. 43, at 1). Defendants oppose Plaintiffs' motion and on August 29, 2016, the Court held oral argument and an evidentiary hearing on Plaintiffs' motion.

## II. **FINDINGS OF FACT**

On December 19, 2011, Plaintiff David Rogers sold the assets of his company, Artisent Inc., and the stock of his company, Ops-Core, Inc., to Defendant Gentex. (Rogers Aff. ¶ 2). These transactions were memorialized through a series of written agreements. Specifically, the parties executed a Stock Purchase Agreement and Asset Purchase Agreement. (*Id.* at ¶ 3). As part of the transaction, Mr. Rogers also entered into an Employment Agreement with Gentex. (*Id.*). Each of the three contracts contain non-competition provisions.

### A. The Non-Competition Provisions

Section 9.4 of the Stock Purchase Agreement, entered into by and among Gentex Corporation, Ops-Core Inc., and the shareholders of Ops-Core Inc. is entitled "Non-Competition Agreement." (Doc. 32-1, at 70). It provides:

> During the period of sixty (60) months from and after the Closing Date, Seller] covenants and agrees that they will not, without Buyer's prior written consent, which may be withheld or given in its sole discretion, directly or indirectly, or individually or collectively within the United States of America, lend any material credit, advice or assistance, or

2

engage in any activity or act in any manner, including but not limited to, as an individual, owner, sole proprietor, founder, associate, promoter, partner, member, joint venturer, shareholder (other than as a less than three (3%) shareholder of a publicly traded corporation), officer, director, trustee, manager, employer, employee, licensor, licensee, principal, agent, salesman, broker, representative, consultant, advisor, investor or otherwise for the purpose of establishing, operating or managing any business or entity that competes with the Business.

(*Id.*). The Stock Purchase Agreement defines "Business" as "the manufacture and sale of integrated protection and situational awareness solutions to customers in the international defense markets." (*Id.* at 9).

The Asset Purchase Agreement, entered into by and among Gentex Corporation, GC Boston Acquisition, LLC, Artisent, Inc., and David Rogers contains a substantially similar non-competition provision. (Doc. 32-2). Section 7.2 of the Asset Purchase Agreement, entitled "Non-Competition Agreement," provides:

> During the period of sixty (60) months from and after the Closing Date, Shareholder and Company each covenants and agrees that he or it will not, without the Purchaser's prior written consent, which may be withheld or given in its sole discretion, directly or indirectly, or individually or collectively within the United States of America, lend any material credit, advice or assistance, or engage in any activity or act in any manner, including but not limited to, as an individual, owner, sole proprietor, founder, associate, promoter, partner, member, joint venturer, shareholder (other than a less than three percent (3%) shareholder of a publicly traded corporation), officer, director, trustee, manager, employer, employee, licensor, licensee, principal, agent, salesman, broker, representative, consultant, advisor, investor or otherwise for the purpose of establishing, operating or managing any business or entity that competes with the Business.

(*Id.* at 51-52). "Business," as defined in the Asset Purchase Agreement, "means Artisent's design and engineering business, except as conducted with Excluded Assets." (*Id.* at 8).

The third contract at issue, the Employment Agreement, entered into by and between Gentex Corporation and David Rogers, also contains a "Non-Competition Agreement." (Doc. 32-3). Paragraph 16 of the Employment Agreement provides:

(a) In consideration for the Purchase Agreements and the employment offered under this Agreement, Rogers unconditionally covenants and agrees that for a period commencing on the date hereof and ending on the last to occur of: (i) sixty (60) months from the date hereof; (ii) twelve (12) months after Rogers ceases to be employed by the Company for any reason if the Company elects to continue to pay his Base Salary for the twelve (12) month period; or (iii) twenty-four (24) months after Rogers ceases to be employed by the Company for any reason if the Company elects to continue to pay his Base Salary for the twenty-four (24) months period (hereafter the 'Non-Competition Period'), Rogers shall not, anywhere in the Restricted Area (as defined in subparagraph (b) below), either directly or indirectly, whether alone or as a partner, joint venturer, stockholder or investor (other than as a less than a three percent (3%) shareholder of a publicly traded corporation), creditor, principal, agent, advisor, member, consultant, officer, director, employee, licensor, licensee, salesman, broker, representative, for any Person, or through any agency or by any other means whatsoever, engage in any business that competes with the business of the Company and its affiliates as conducted or reasonably intended to be conducted by senior management while Rogers is employed by Company.

(b) As used in this Section 16, the terms (A) 'Restricted Areas' shall mean (i) each state within the United States of America and the District of Columbia, and each of the restrictions set forth above consists of a series of separate covenants, one for each and every state and the District of Colombia, plus (ii) each other country in the world and (B) 'Person' shall mean any individual, corporation (including any non-profit corporation), general, limited, or limited liability partnership, limited liability company, joint venture, estate, trust, association, organization, or other entity or governmental body.

(*Id.* at 8). Although "business of the Company" is not defined in the Employment Agreement, the Company is defined as "a provider of integrated protection and situational awareness solutions to customers in the defense markets." (*Id.* at 2).

4

Upon execution of the contracts, Mr. Rogers became employed as Gentex's Vice President of Concept Designs. (Rogers. Aff. ¶ 11). In that capacity, Mr. Rogers "was largely responsible for determining the products developed and used for different customers and market segments." (*Id.* at ¶ 12). He voluntarily left this position on February 6, 2015. (*Id.*). The parties agree that the relevant non-competition agreements expire on December 18, 2016. (*Id.* at ¶ 13).

### B. The Proposed Business

On November 17, 2015, counsel for Mr. Rogers wrote to Gentex, advising Gentex, among other things, "of Mr. Rogers' current plan to launch a new business at some point in the near future that plans to design, manufacture and market tactical military products replicas." (Doc. 32-4, at 2-3) (emphasis in original). The letter further provided that:

> The target audience for these products will be airsoft, paintball, collectors and possibly entertainment companies who are looking for replica military products for their film and television products. These products will be developed so as not to infringe patents, copyrights, trade-dress, and protected intellectual property of Gentex, its subsidiaries, and other third parties. In no way will his venture compete with Gentex nor will these products be marketed to Gentex's customers.
>
> Should you require more information about his future plans, please have your legal counsel let me know and we can coordinate a further discussion. If not, Mr. Rogers would ask you to confirm in writing Gentex's agreement that Mr. Rogers' pursuit of the stated business would not infringe upon or violate the terms of his various agreements with Gentex.

(*Id.* at 3). Counsel for Gentex responded to the letter on December 4, 2015, requesting "additional information to evaluate Mr. Rogers's request for consent to pursue his proposed business venture." (Doc. 32-5, at 2).

Counsel for Mr. Rogers responded to letter on December 8, 2015, and attached additional information about Mr. Rogers' proposed business. (Doc. 32-6). Specifically, counsel for Mr. Rogers provided counsel for Gentex will the following proposed business plan:

| | |
|---|---|
| Business Start Date: | February, 2016 (*estimated*) |
| Business Purpose: | Design & engineering of toy replica military products for Airsoft, Paintball, Collectors, Movie Prop-Studios |
| Intended Products: | Toy replica tactical military: Goggles, Helmets, Face Masks, Night Vision Goggles, Communication Headsets, Body Armor, Load Carriage, Body Armor, Holsters, Weapons |
| Business Case: | Existing toy replicas sold in the existing market space are less than fully functional 'look-alike' copies of authentic tactical military products like those produced by Gentex and its affiliates. While many of the toy replicas do not provide the full functionality or performance, their replication still often violate the trade-dress, trade-mark, copyright, design and utility patents belonging to their authentic counterparts. Since most of the toy replicas are manufactured overseas and sold through a variety of retail outlets on the internet, it is challenging and problematic for the company's manufacturing authentic products to stop the copying and infringement of their intellectual property. Alternatively, when the companies who manufacture the authentic equipment are successful in tracking down and stopping the manufacture of sale or replicas that violate their intellectual property, it creates a problem for the toy replica retailers who must then find an alternative source of supply for their products. |
| Business Approach: | Mr. Rogers' future business intends to solve this problem by providing a solution that will benefit the [sic] both the authentic tactical equipment manufacturers (*like Gentex Corporation and its affiliates*) as well as the toy replica manufactures [sic] and retailers. Mr. Rogers future business will copy the design and |

6

>engineering of authentic tactical military equipment in such a way that the resulting toy replicas do not infringe on authentic tactical manufacturer intellectual property. The development process for toy replica products will include patent searches and close interaction with the authentic tactical product manufacturers to ensure that the designs do not violate any of their intellectual property. Once this has been confirmed, Mr. Rogers' future business will offer the toy replica designs to toy replica manufacturers with an 'authorized manufacturer seal of approval,' certifying that the designs have been approved by the authentic equipment manufacturers and do not infringe on their intellectual property. The toy replica manufacturers will then be able to proceed without risk of cease and desist / stop orders and other problems resulting from infringement lawsuits. Toy replica retailers will have the benefit of knowing that products bearing the authorized seal of approval will not risk supply chain interruption or cease and desist / stop orders and intellectual property infringement lawsuits themselves.

Non-Competition with Gentex and its affiliates (Company):

>During Mr. Rogers employment, the Company did not engage in the business of Toy Replica Tactical Military Equipment for the Airsoft, Paintball, Collectors, and Movie Prop – Studios. The toy replica business was not intended to be conducted by senior management while Rogers was employed at the Company.

Non-Competition – *Products*:

>The Company does not manufacture toy products suitable for the Airsoft, Paintball, Collectors, and Movie Prop – Studio markets due to the significantly lower prices demanded by these customers. The Company has consistently maintained a position of not wanting to dilute or devalue its brand image as a high quality authentic tactical military equipment manufacturer by manufacturing or selling products for the Airsoft, Paintball, Collectors, and Movie Prop – Studio markets. Many authentic products are also not allowed to be sold to these markets and

> the general public due to restrictions on tactical military equipment imposed by US and international governments.

Non-Competition – *Customers*:

> Since the Company does not manufacture toy replica products suitable for the Airsoft, Paintball, Collectors, and Movie Prop – Studios markets, it does not have customers in these markets *
>
> * In rare instances, a few Airsoft, Paintball, Collectors, Movie Prop-Studios 'customers' did <u>purchase</u> Gentex (and its affiliates) products since 'toy replica' versions were not available. In keeping with the non-compete agreements, Mr. Rogers business will not solicit, market or sell his toy replica products to 'Gentex customers' that existed during the time of his employment and the period of the non-competition agreement.

Non-Competition – *Engineering and Design*:

> Mr. Rogers business will not engage in any design or engineering activities that compete with the Company since the majority of the work involved will be 'copying' the design and engineering of others by excluding features and technology that have intellectual property protection. The remainder of his company's design and engineering work will consist of using information that is already part of the public domain.

(Doc. 32-6 at 4-6).

Counsel for Gentex responded to the letter and proposed business plan on December 11, 2015. (Doc. 32-7). In that letter, counsel for Gentex noted that Mr. Rogers's December 8 letter acknowledged that "Gentex has sold its products to customers in the markets that Mr. Rogers plans to target, i.e., Airsoft, Paintball, Collectors, and Movie Prop – Studios." (Def. Ex. 3). The letter further stated that "Mr. Roger proposes that he will not solicit or sell

8

to existing Gentex customers, but the non-competition provisions provide broader protection to the extent they prohibit Mr. Rogers from conducting any business that in any way competes with Gentex." (*Id.*). The parties exchanged additional correspondences, with the final letter dated January 11, 2016 from counsel for Gentex to counsel for Mr. Rogers stating that "Gentex is not willing to provide advisory approval for Mr. Rogers's hypothetical and not fully articulated proposed business venture." (*Id.*).

Mr. Rogers notes that his proposed business "will not be in a position to have any actual products available to market or sell before the end of the non-competition expires in December, 2016." (Rogers. Aff. ¶ 22). Nor will any products be "available for pre-sale." (*Id.*). Mr. Rogers intends "to use the rest of 2016 to take actions designed to successfully launch [his] business in 2017 by, for example, meeting with toy and replica product industry representatives, developing relationships with suppliers of products, meeting with vendors and attempting to negotiate agreements with developing and possibly filing applications for patents, among other others. . . ." (*Id.*).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 governs the issuance of a preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Resources Defense Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249

(2008) (citations omitted). "A party's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Ace Am. Ins. Co. v. Wachovia Ins. Agency, Inc.*, 306 F. App'x 727, 730-31 (3d Cir. 2009) (citing *Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24 (citations omitted). Moreover, "[a] party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (citing *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980)).

## IV. ANALYSIS

Count III of Plaintiffs' Amended Complaint, (Doc. 34), requests a declaratory judgment "declaring that [Plaintiffs'] proposed and contemplated business venture which will design, manufacture and market toy replicas of tactical military products will not violate certain restrictive covenants." (Doc. 43, at 4). After the filing of the Amended Complaint, Plaintiffs moved for a preliminary injunction requesting an order permitting them to operate a business that they assert does not compete with that of Defendant Gentex under the terms of the relevant restrictive covenants. Specifically, in the Proposed Order (submitted along with Plaintiffs' Motion for Preliminary Injunction) Plaintiffs request an order providing that "Mr. Rogers is permitted to pursue his proposed business of design, manufacture and market [sic] toy replicas of tactical military products. Defendant Gentex Corporation is

precluded from taking any action to interference [sic] with Mr. Rogers's toy replica business." (Doc. 42-1).

### A. Plaintiffs Failed to Demonstrate Immediate & Irreparable Injury

In order for preliminary injunctive relief to be appropriate, the moving party must show that it will be irreparably harmed in the absence of injunctive relief. "In general, to show irreparable harm a plaintiff must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Acierno*, 40 F.3d at 653 (3d Cir. 1994) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). "[A] showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a clear showing of *immediate* irreparable harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (emphasis in original) (internal citation and quotation marks omitted). Moreover, the Third Circuit has stated that:

> This Court has held that more than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' *Ammond v. McGahn*, 532 F.2d 325, 329 (3d Cir. 1976), or a 'presently existing actual threat; (an injunction) may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law.' *Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). In a similar case involving noncompetition and non-disclosure agreements, it was declared to be well-settled law that 'injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued 'to restrain one from doing what he is not attempting and does not intend to do.' *Standard Brands Inc. v. Zumpe*, 264 F. Supp. 254, 267-68 (E.D. La. 1967) (footnotes omitted).

*Continental Grp., Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980).

In support of his argument that he will suffer irreparable harm absent injunctive relief, Mr. Rogers asserts that:

> Like most business opportunities, I believe time is of the essence with regard to my proposed business. I see a hole in the market which needs to be filled. I have substantial concern that through the passage of time, other entrepreneurs and businesses will seize upon this opportunity and effectively fill this significant demand before I am able to enter the market. If a business competitive to my contemplated business were to enter the market before me, my ability to execute on my business plan and seize a sizable market share would be devastating [sic] and quite likely, impossibly [sic] to quantify from a damages perspective.

(Rogers. Aff. ¶ 33).[1] However, Mr. Rogers testified at the preliminary injunction hearing that he has not taken any active steps to start his business. Aug. 29, 2016 Unofficial Hr'g Tr. at 64:2-21. He has not developed or designed any products, conducted any patent searches, or launched a website. His proposed business has no employees, no computers, no software, no equipment, and no office. *Id.* at 63:6-20. Nor has Mr. Rogers identified any customers that he has lost or may lose should the Court deny his motion for preliminary injunction. And Mr. Rogers could not identify a single competitor that could enter his

---

[1] Plaintiffs also direct the Court to a decision of the Commonwealth Court of Pennsylvania where the Court noted that "the impending loss of a business opportunity is considered to be irreparable harm." *Carlini v. Highmark*, 756 A.2d 1182, 1188 (Pa. Cmwlth. 2000). As an initial matter, federal law, not state law, governs the Court's determination of whether Plaintiffs have demonstrated irreparable harm. *See Instant Air Freight Co.*, 882 F.2d at 799 ("We utilize a federal standard in examining requests to federal courts for preliminary injunctions."). *See also Systems Operations v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1141 (3d Cir. 1977) ("Although the right upon which this cause of action is based is state-created, Rule 65(a) of the Federal Rules of Civil Procedure contemplates a federal standard as governing requests addressed to federal courts for preliminary injunctions.") (citation omitted). Moreover, *Carlini* is inapposite because there, unlike here, the movant demonstrated the potential for a loss of over 45% of his current business as a result of the Defendant's termination of his participation in a HMO network. Here, Plaintiffs alleged loss of business is entirely speculative and conjectural. Indeed, Plaintiffs have not identified any actual or prospective customers or business opportunities that may be lost in the absence of injunctive relief.

proposed market, or any specific business opportunity that he would lose, should the Court deny his Motion.

The Court concludes that, under the circumstances, Plaintiffs have not and cannot demonstrate immediate and irreparable injury in the absence of an injunction. At most, Plaintiffs have demonstrated a mere "risk of irreparable harm" which is insufficient to entitle them to a preliminary injunction altering the status quo. *Continental Grp.*, 614 F.2d at 359. As the Supreme Court concluded in *Winter*, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear show that the plaintiff is entitled to such relief." 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)). Mr. Rogers's affidavit and testimony make clear that any risk of irreparable harm is entirely speculative and conjectural. However, "[s]peculative injury does not constitute a showing of irreparable harm." *Arroyo v. PrimeCare Medical Inc.*, Civil No. 3:14-cv-2039, 2016 WL 3457723, at *5 (M.D. Pa. June 23, 2016) (slip copy) (citing *Continental Grp.*, 614 F.2d at 359). Because "it is well settled law that injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties," *Continental Grp.*, 614 F.2d at 359, the Court concludes that Plaintiffs have failed to demonstrate immediate and irreparable injury and therefore its Motion must fail.[2] *See Ace*

---

[2] The Court further finds that Plaintiffs' over six month delay between the filing of its Complaint and the filing of its Motion for Preliminary Injunction weighs against a finding of irreparable harm. *See, e.g., Profoot, Inc. v. MSD Consumer Care, Inc.* Civ. No. 11-7079, 2012 WL 2262904 (D.N.J. June 14, 2012) (three month delay in moving for a preliminary injunction precludes finding of irreparable harm); *Hart*

*Am. Ins. Co.*, 306 F. App'x at 732 ("A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction.") (citations omitted).

## B. Plaintiffs Failed to Establish a Likelihood of Success on the Merits

The Court further finds that Plaintiffs have failed to demonstrate a likelihood of success on the merits of their declaratory judgment claim that Plaintiffs' proposed business does not compete with the business of Gentex as defined in the relevant contractual provisions. To establish a likelihood of success on the merits, "the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action." *Hotel Investors, LLC v. Modular Steel Sys., Inc.*, Civil Action No. 4:16-1337, 2016 WL 3569247, at *2 (M.D. Pa. July 1, 2016) (slip copy) (citations omitted). Here, Plaintiffs' cause of action arises under The Declaratory Judgment Act. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides, in relevant part, "[i]n a case or actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.* "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* Plaintiffs,

---

*Intercivic, Inc. v. Diebold, Inc.*, Civil No. 09-678 (RBK), 2009 WL 3245466, at *8 (D. Del. Sept. 30, 2009) ("The Court can not [sic] find irreparable harm. Here, Plaintiffs waited three weeks from the date of the Acquisition to file for emergent relief."); *Pharmacia Corp. v. Alcon Labs, Inc.*, 201 F. Supp. 2d 335, 383-84 (D.N.J. 2002) (delay of one year in seeking injunctive relief "knocks the bottom out of any claim of immediate and irreparable harm"); *New Dana Perfumes Corp. v. The Disney Store, Inc.*, 131 F. Supp. 2d 616, 630 (M.D. Pa. 2001) ("In this case, there is an unexplained delay of two months in presenting a cease and desist letter, and another unexplained delay of five months in moving for injunctive relief. Under the circumstances, plaintiffs' delay, alone, precludes a finding of irreparable harm, and therefore warrants denial of the preliminary injunction motion . . .").

therefore, must set forth sufficient evidence to convince the Court they are likely to succeed on its claim that the proposed business does not violate any of the three non-competition covenants.

Here, the Court concludes that Plaintiffs are unlikely to succeed on the merits of their declaratory judgment claim. Even if the court were to assume, for purpose of this Motion, that the relief Plaintiffs seek is available under the Declaratory Judgment Act, Plaintiffs' proposed business plan to design toy replicas of helmets for the Airsoft, Paintball, Collectors, and Movie – Prop Studios likely violates the non-compete agreements.[3] In particular, paragraph 16 of the Employment Agreements prohibits Mr. Rogers from "engag[ing] in any business that competes with the business of the Company and its affiliates *as conducted or reasonably intended to be conducted by senior management* while Rogers is employed by the Company." (Doc. 32-3, at 8) (emphasis added). Based on the

---

[3] The Court is not convinced that the relief Plaintiffs seek in Count III of the Amended Complaint is available under the Declaratory Judgment Act. "The Supreme Court has observed that for purposes of the Declaratory Judgment Act, the controversy 'must be definite and concrete' requiring 'specific relief' of a 'conclusive character' and not 'an opinion advising what the law would be upon a hypothetical state of facts.'" *McKenna v. PSS World Medical, Inc.*, Civil Action No. 09-0367, 2009 WL 2007116, at *2 (W.D. Pa. July 9, 2009) (quoting Step-*Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). In *McKenna*, the Court found that:

> Plaintiff seeks a declaration as to the enforceability of a restrictive covenant that plaintiff has not breached and which defendant has not yet attempted to enforce. As such, plaintiff is asking the court to construe a contract based upon a hypothetical set of facts. Any judgment interpreting the employment agreement would, therefore, lack the necessary conclusivity. Indeed, one of our sister courts has specifically held that interpreting the non-competition clause of an agreement 'without finding the necessary facts constitutes advisory opinion writing, and that is constitutionally forbidden.' *Simms v. Exeter Architectural Prods. Inc.*, 868 F. Supp. 677, 684 (M.D. Pa. 1994).

*McKenna*, 2009 WL 2007116, at *3.

evidence presented to the Court, the Court finds that it is likely that Plaintiffs' proposed business would in fact compete with the business of Gentex and its affiliates as conducted or reasonably intended to be conducted by senior management. First, the testimony established that Gentex and its affiliates make available for sale to the general public certain helmets through its website and distribution channels. Tommy Short, Vice President of Ground Systems at Gentex, testified that approximately five percent of Gentex's sales take place online where it makes available to the public its helmets. Aug. 29, 2016 Unofficial Hr'g Tr. at 5:22-24. Mr. Short further testified that approximately sixty percent of Gentex's sales take place through its distributors, *id.* at 5:20-22, and that individuals who wish to purchase Gentex helmets for use in paintball or Airsoft may purchase the helmets either from distributors or Gentex's website. *Id.* at 11:1-5. In addition, Mr. Rogers acknowledged that Gentex's website and distribution channels make available to the general public (including the replica, Airsoft, and paintball market) Gentex's helmet products. *Id.* at 50:25-51-5. Furthermore, Mr. Rogers admitted that Gentex marketed its base jump helmet not just to the military but to commercial and individual users for use in outdoor activities and that paintball and Airsoft are outdoor activities. *Id.* at 53:4-19. Second, Plaintiffs' proposed business plan, which accompanied a December 8, 2015, letter from his counsel plainly acknowledged that "[i]n rare instances, a few Airsoft, Paintball, Collectors, Movie Prop-Studios 'customers' did <u>purchase</u> Gentex (and its affiliates) products..." (Doc. 32-6, at 4). Third, Plaintiffs own exhibits submitted in support of its Motion acknowledge that certain

16

customers in the Airsoft market purchase Gentex products. (Pl. Ex. 6). Specifically, a November 18, 2014, article from Airsoftinsider.com entitled "Raptors Airsoft RTV Helmet" notes that "Helmets seem to be all the rage these days on the field and the Ops-Core Fast Bump and helmets fashioned after it are a popular choice." (*Id*). On balance, the evidence before the Court leads it to conclude that Plaintiffs do not have a reasonable probability or likelihood to succeed on the merits of its claim because the proposed business plan likely violates the non-competition covenant contained in Mr. Rogers's employment contract.[4]

## V.     CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Preliminary Injunction, (Doc. 42). A separate order follows.

_____
Robert D. Mariani
United States District Judge

---

[4] Because Plaintiffs have failed to demonstrate irreparable harm or likelihood of success on the merits, "the Court need not address the last two factors in the preliminary injunction analysis." *Asian-Am. Licensed Beverage Assoc. v. Commonwealth of Pennsylvania*, No. Civ. A. 1:05-CV-2135, 2005 WL 3077246, at *7 (M.D. Pa. Nov. 3, 2005) (citing *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000)).