IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID ROGERS and OPTION-X, LLC | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | 3:16-CV-00137 |
| | : | (JUDGE MARIANI) |
| GENTEX CORPORATION, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Presently before the Court is Defendant Gentex Corporation's Motion to Dismiss. (Doc.

34). For the reasons that follow, Defendant's Motion will be granted in part and denied in

part.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

On January 26, 2016, Plaintiffs filed a Complaint against Defendant Gentex Corporation.

(Doc. 1). In the Complaint, Plaintiffs asserted the following causes of action: (1) Breach of

Contract/Stock Purchase Agreement (Count I); (2) Breach of Contract/Employment

Agreement (Count II); (3) Declaratory Judgment (Count III); and (4) Violation of

Pennsylvania Wage Payment & Collection Law (Count IV). (*Id.*). Defendant moved to

dismiss the Complaint on March 4, 2016. (Doc. 23). Thereafter, Plaintiffs filed an Amended

Complaint, asserting three additional causes of action: (1) fraudulent misrepresentation

(Count V); (2) negligent misrepresentation (Count VI); and (3) fraud (Count VII). (Doc. 32). On April 18, 2016, Defendant moved to dismiss the Amended Complaint.[1] (Doc. 34).

## II. STATEMENT OF FACTS

### A. Factual Background

In December 2011, Plaintiff David Rogers "sold the assets of his company, Artisent, Inc. and the stock of his company Ops-Core, Inc. to Gentex." (Doc. 32, at ¶ 1). "Among other things, the parties' agreement required Gentex to pay to a company owned by Mr. Rogers, Option-X LLC, a royalty based upon its sale of a particular product." (Id.). As part of the transaction, Mr. Rogers also entered into an Employment Agreement with Gentex, "through which Mr. Rogers would receive a salary and the opportunity to earn a bonus for a defined period of time." (Id.). Each of the three contracts (the Asset Purchase Agreement ("APA"), the Stock Purchase Agreement, (the "SPA"), and the Employment Agreement) contain non-competition clauses, as well as various terms which Plaintiffs allege that the Gentex has breached.[2] In the instant action, Plaintiffs request "money damages arising from Gentex's failure to pay sums due and owing under the parties' various agreements, as well as arising from Gentex's fraudulent misconduct associated with same." (Id.).

---

[1] On June 29, 2016, Plaintiffs moved for a preliminary injunction. (Doc. 42). In their Motion, Plaintiffs requested that the Court permit them "to operate a business that does not compete with that of Gentex Corporation ("Gentex") under the terms of the relevant restrictive covenants." (Doc. 43, at 1). The Court denied Plaintiffs' Motion on September 8, 2016. (Doc. 63).

[2] The Court has extensively discussed the non-competition clauses as well as Plaintiffs' proposed business in a prior memorandum opinion and need not repeat such details here. See Rogers v. Gentex Corp., 3:16-CV-00137, 2016 WL 4708004, at **1-5 (M.D. Pa. Sept. 8, 2016).

## B. The Stock Purchase Agreement

On December 19, 2011, Gentex entered into the SPA "through which it agreed to purchase the stock of Ops-Core, Inc. from the shareholders of Ops-Core, Inc., including Mr. Rogers."[3]  (*Id.* at ¶ 7).  Section 2.3 of the SPA is entitled "Products Revenue Earn-Out and Chinstrap Fee." (Doc. 32-1, at 20).  According to the Amended Complaint, "[t]he parties have collectively acknowledged that Section 2.3 of the SPA provides for a royalty to Option-X arising from the operating profits received by Gentex arising from all orders, contracts, royalties, revenue, and profits resulting from sale of the IHRS chinstrap and any amendment, extension, renewal, assignment, or successor contract thereto." (Doc. 32, at ¶ 12).  "Section 2.4 of the SPA provides that neither Buyer nor its Affiliates shall breach or cause a default under the Chinstrap Contract." (*Id.* at ¶ 13).

"The SPA also includes references to two escrow arrangements, designed to hold a portion of the purchase price in escrow pending certain contingencies." (*Id.* at ¶ 14).  "The terms by which the escrow funds would be held and administered contain identical terms relating to the payments by the parties to PNC Bank, as escrow agent." (*Id.* at ¶ 15).  Specifically, "Section 2.2(b)(i) of the SPA, which incorporates by reference, Exhibit 2.2(b)(i) entitled 'Escrow Agreement,' states within Section 3.04" the following provision:

> The Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached hereto as Exhibit C, which compensation shall be paid one-half by

---

[3] Also on December 19, 2011, Gentex, "along with GC Boston Acquisition, LLC, as Purchaser and Artisent, Inc. (Seller) and David Rogers (Shareholder)" entered into the APA.  (Doc. 32, at ¶ 16).  At this time "Mr. Rogers and Gentex negotiated a written employment agreement," (*Id.* at ¶ 19), and thereafter Mr. Rogers "commenced his work at Gentex as Vice President of Concept Development." (*Id.* at ¶ 25).

each of (i) Purchaser and (ii) Artisent, David Rogers and Viktoria Rogers, jointly and severally. The fee agreed upon for the services rendered hereunder is intended as full compensation for the Escrow Agent's services as contemplated by this escrow agreement . . . If any amount due to the Escrow Agent hereunder is not paid within thirty (30) days of the date due, the Escrow Agent in its sole discretion may charge interest on any unpaid amount up to the highest rate permitted by the applicable law. The Escrow Agent shall have, and is hereby granted, a prior lien upon the Escrow Property with respect to its unpaid fees, non-reimbursed expenses and unsatisfied indemnification rights, superior to the interests of any other persons or entities and is hereby granted the right to set off and deduct any unpaid fees, non-reimbursed expenses and unsatisfied indemnification rights from the Escrow Property.

(*Id.*).

According to the Plaintiffs, "Gentex has breached the SPA agreement by not providing Option-X and David Rogers an accurate and complete accounting of Gentex's IHRS chinstrap sales, profits, or any royalty payment as required by the SPA, despite written demand." (*Id.* at ¶ 26). Moreover, "Gentex has breached the SPA agreement 2.3(b)(iv) by not adhering to the accounting terms specified therein and changing its calculation of Chinstrap 'operating profits' to result in zero or negative profits in a deliberate effort to avoid paying the chinstrap royalty," (*Id.* at ¶ 29), as well as "by not adhering to the terms specified therein and replacing the Corporation's SAP accounting software including the chart of accounts used in profit and loss calculations with a totally different accounting software with a different chart of accounts." (*Id.* at ¶ 30). Gentex is further alleged to have breached "and/or caused some degree of default under the Chinstrap Contract by failing to provide on-time product deliveries, timely information to customers when requested, products and components that meet agreed upon quality standards, sales and business development

4

support of this product, and production of this product." (*Id.* at ¶ 31).   Plaintiffs further allege that "Gentex has actively defrauded the Plaintiffs by concealing information from Plaintiffs which would allow them to calculate their royalty.  When information and anecdotal information has been provided by Gentex, Gentex has fraudulently mischaracterized expenses and revenues in order to artificially and improperly reduce chinstrap profits so as to avoid paying any royalty." (*Id.* at ¶ 28).

Plaintiffs also allege that "Gentex has breached the SPA by failing to pay its share of the Annual Administration Fees owed to the escrow agent for managing the IP Escrow Agreement," and that the "PNC bank representative responsible for managing these escrow accountants [sic] has confirmed that no fees were paid by Gentex for years 2012, 2013, and 2014." (*Id.* at ¶ 32).  In addition, Plaintiffs further aver that "Gentex unilaterally and without Plaintiffs' knowledge or consent, agreed to increase the escrow agent's compensation to $7,500 per year," (*Id.*), and also "failed to pay its share of the escrow agent's fee for 2015 (and possibly 2013 and 2014) years as well." (*Id.* at ¶ 33).  "As a result of Gentex's failings in this regard, the escrow agent has taken the position in accordance with the terms of the Escrow Agreement that it may unilaterally deduct amounts due to it from the amounts being held in escrow, which amounts are payable to Plaintiffs." (*Id.* at ¶ 34).  This conduct, according to the Plaintiffs, has "had the practical effect of reducing the amount of money payable to Plaintiffs in the escrow accounts themselves, thus causing Plaintiffs' damage." (*Id.* at ¶ 35).

## C. The Employment Agreement

In addition to breaching the SPA, Plaintiffs allege that Defendant Gentex has breached the Employment Agreement. The Employment Agreement "specifically sets out the compensation Mr. Rogers could earn while acting as a Gentex employee." (*Id.* at ¶ 22). With respect to Mr. Rogers' contemplated bonus, Section 3 of agreement, which references Exhibit B to the agreement, provides that he "shall also be eligible to participate in Company's bonus and incentive programs at same the level [sic] as employees in similar leadership positions." (*Id.* at ¶ 23). Section 11 of the Employment Agreement addresses termination of Mr. Rogers' employment and provides that "[n]either the Company nor Rogers may terminate this Agreement prior to the expiration of the Term, except as provided below." (*Id.* at ¶ 24). "If the Company terminates this Agreement for Cause, or if Rogers terminates this Agreement for other than Good Reason, then the Company shall pay to Rogers, within (30) days after the date of such termination, all accrued but unpaid amounts payable under Section 3 with respect to the period ending on the date of termination, plus unreimbursed business expenses through the date of termination if properly incurred and documented, but not any unpaid bonus or other amount under this Agreement." (*Id.*).

In December 2014, "Mr. Rogers informed Gentex of his intentions to leave his position in the near future; however, Mr. Rogers did not specify an exact date at that time. It was agreed with senior company management that the resignation date would be decided after

a plan was developed and implemented to transition his work responsibilities to other personnel within the company." (*Id.* at ¶ 36). "In early January 2015, Mr. Rogers inquired about his 2014 incentive bonus, to which he was entitled based on the terms of the Employment Agreement." (*Id.* at ¶ 37). Mr. Rogers was told that, as happened in 2013, "the company would not be paying 2014 bonuses since the company did not meet its 2014 profit/revenue targets according to the corporate bonus structure. A bonus was paid after the 2012 calendar year as the targets had been achieved." (*Id.* at ¶ 38). "Based upon the affirmative representations made by Gentex concerning the 2014 bonuses, on January 28, 2015, Mr. Rogers informed Gentex that his final date of employment would be February 2, 2015, which was then extended to February 6, 2015." (*Id.* at ¶ 39). According to Plaintiffs, "[h]ad Mr. Rogers been informed truthfully by Gentex that company revenue targets had been met and bonuses would be paid, Mr. Rogers would have deferred his departure until after the bonus payment was made in the early Spring of 2015." (*Id.*).

In March of 2015, "Mr. Rogers discovered that Gentex's representation was inaccurate as the company, in fact, did meet its 2014 revenue targets." (*Id.* at ¶ 41). Plaintiffs allege, upon information and belief, that "many, if not all, employees in similar leadership positions to Mr. Rogers received their 2014 bonuses." (*Id.*). Thus, Gentex, "[a]ware of Mr. Rogers pending departure and intending to induce him to leave without having to pay the bonus. . . fraudulent and/or negligently made false representations relating to the 2014 bonus." (*Id.* at ¶ 42).

Plaintiffs further allege that Mr. Rogers was due a bonus "in accordance with the plain language of the Employment Agreement." (*Id.* at ¶ 43). Citing Section 11 of the Employment Agreement, discussed above, Plaintiffs claim that "Mr. Rogers was entitled to the 'unpaid amounts payable under Section 3 with respect to the period ending on the date of termination.'" (*Id.* at ¶ 44). "Section 3 of the Employment Agreement entitled 'Compensation' refers to Exhibit B of the Employment Agreement," (*Id.* at ¶ 45), which, in turn, "includes provisions for Mr. Rogers' base salary and bonus." (*Id.* at ¶ 46). Thus, according to Plaintiffs "Mr. Rogers bonus was an 'accrued but unpaid amounts payable under Section 3." (*Id.*). Finally, Plaintiffs note that "[w]hile Section 11(c) also contains language stating that Mr. Rogers would not receive a bonus, such language is contradictory and inconsistent with the language in the same section entitling Mr. Rogers to payments for 'accrued but unpaid amounts payable under Section 3.'" (*Id.* at ¶ 47).

## III.    STANDARD OF REVIEW

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV.   ANALYSIS

### A.  Breach of Contract

"To allege breach of contract in Pennsylvania, a plaintiff must show '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" *Kaymark v. Bank of Am. N.A.*, 783 F.3d 168, 182 (3d Cir. 2015) (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. 2004))

### i.  Breach of Stock Purchase Agreement

In Count I of the Amended Complaint, Plaintiffs allege that "Gentex has breached the SPA by, among other things, failing to accurately account for, disclose, calculate and pay royalties due and owing under the SPA, causing a breach or some degree of default under the Chinstrap Contract and by failing to pay its share of the amounts owed to the escrow agent for the administration of the escrow accounts." (Doc. 32, at ¶ 63).

Defendant seeks dismissal of Count I on two bases. First, Defendant maintains that Plaintiffs' claim "is hypothetical" in that Plaintiffs do not and cannot claim to have "suffered actual harm as a result of any action by Gentex with respect to the escrow accounts." (Doc. 35, at 17). Second, Defendant maintains that "Plaintiff fails to state a claim under the Stock Purchase Agreement because the escrow terms are embodied in the agreement," which "expressly contemplates that the parties would enter into a separate escrow agreement with

10

PNC Bank, the escrow agent, concerning the escrow terms." (*Id.* at 17) (emphasis supplied) (citing Doc. 34-1). Moreover, Defendant claims that "the term that Plaintiffs claim was breached—Section 3.04—does not appear in the Stock Purchase Agreement, but rather in the separate 'Escrow Agreement.'" (*Id.*). Accordingly, Defendant maintains that "to the extent Plaintiffs wish to assert a breach of the escrow terms, they have no claim under the Stock Purchase Agreement."[4] (*Id.*). Plaintiffs counter that Gentex does not "seek dismissal of Plaintiffs' claims asserted in Count One alleging that Gentex breached the parties' Stock Purchase Agreement in connection its [sic] requirements to account for and pay royalties arising from its sale of the so-called 'chinstrap' products." (Doc. 37, at 10).

The Court agrees with the Plaintiffs and finds they have adequately stated a claim for breach of the SPA in Count I of the Amended Complaint. The Plaintiffs have alleged the existence of a contract, and that Defendant Gentex breached the contract by, among other things, "failing to accurately account for, disclose, calculate and pay royalties due and owing under the SPA" and by "causing a breach or some degree of default under the Chinstrap Contract." (Doc. 32, at ¶ 63). Moreover, Plaintiffs have alleged to have suffered damages as a result of the breach. Thus, the Court will deny Defendant's Motion to Dismiss Count I.

### ii. Breach of Employment Agreement

In Count II of the Amended Complaint, Plaintiffs allege that "Gentex has breached the Employment Agreement by, among other things, failing to tender to Mr. Rogers his earned

---

[4] Defendant further notes that "[i]f Plaintiffs elect to pursue a claim under the escrow agreement, the escrow agent is a necessary and indispensable party that must be joined." (Doc. 35, at 17 n.8).

bonus for year-end 2014, prior to the termination of his employment on February 6, 2015."

(Doc. 32, at ¶ 67). Defendant seeks dismissal of Count II on the theory that, under the

terms of the Employment Agreement, Plaintiffs have "no plausible claim to such a bonus."

(Doc. 35, at 12). Specifically, Defendant notes that although Plaintiffs claim that Gentex

breached an obligation to pay an earned bonus for the year-end 2014, "he avers no facts

that plausibly suggest entitlement to a bonus." (Id. at 13).

The Court disagrees and, accepting Plaintiffs' factual allegations as true, concludes that

Count II of the Amended Complaint adequately states a claim for breach of the Employment

Agreement. Plaintiffs have alleged: (1) the existence of a contract (here, the Employment

Agreement); (2) that Defendant Gentex has breached the terms of the employment

agreement by failing to tender to Mr. Rogers his earned bonus, which Plaintiffs submit "was

an 'accrued but unpaid amount[] payable under Section 3,'" (Doc. 32, at ¶ 46), of the

Employment Agreement; and (3) that, as a result, Plaintiffs have suffered damages.[5] That

is sufficient to state a claim of breach of contract and, accordingly, the Court will deny

Defendant's Motion to Dismiss Count II of the Amended Complaint.

---

[5] As Plaintiffs note, "[w]hile Section 11(c) also contains language stating that Mr. Rogers would not receive a bonus, such language is contradictory and inconsistent with the language in the same section entitling Mr. Rogers to payments for 'accrued but unpaid amounts payable under Section 3.'" (Id. at ¶ 47). Given this apparent ambiguity, the Court believes it would be inappropriate to resolve the parties' competing interpretations of the Employment Agreement on a Motion to Dismiss. See Butters Living Trust v. Swepi, L.P., No. 4:12-cv-02010, 2013 WL 3679533, at *5 (M.D. Pa. July 12, 2013) (where a contract contains ambiguities "a motion to dismiss on the pleadings [is] inappropriate").

## B. Declaratory Judgment

In Count III of the Amended Complaint, Plaintiffs request a declaratory judgment declaring that their "proposed and contemplated business venture which will design, manufacture and market toy replicas of tactical military products will not violate certain restrictive covenants." (Doc. 43, at 4). After the filing of the Amended Complaint, Plaintiffs moved for a preliminary injunction seeking an order permitting them to operate a business that they assert does not compete with that of Defendant Gentex under the terms of the relevant restrictive covenants. Specifically, in the Proposed Order (submitted along with Plaintiffs' Motion for Preliminary Injunction) Plaintiffs request an order providing that "Mr. Rogers is permitted to pursue his proposed business of design, manufacture and market [sic] toy replicas of tactical military products. Defendant Gentex Corporation is precluded from taking any action to interference [sic] with Mr. Rogers's toy replica business." (Doc. 42-1). The Court denied Plaintiffs' Motion on September 8, 2016. (Doc. 63).

As Plaintiffs noted in their brief in support of their Motion for Preliminary Injunction, "waiting on his declaratory judgment claim will render his claim moot, as his restrictive covenants expire on December 18, 2016." (Doc. 43, at 1). As of this date, the restrictive covenants have now expired, rendering Count III of Plaintiffs' Amended Complaint moot. *See Mercier v. ICH Corp.,* Civ. A. No. 87-3855, 1990 WL 107325, at *3 (E.D. Pa. July 25, 1990) (dismissing as moot plaintiff's declaratory claim where, as here, "the restrictive

covenant no longer has any force or effect"). Accordingly, the Court will grant Defendant's

Motion to Dismiss Count III of the Amended Complaint.

### C. Violation of Pennsylvania Wage Payment & Collection Law

In Count IV of the Amended Complaint, Plaintiffs assert a claim under Pennsylvania

Wage Payment & Collection Law. Plaintiff alleges that Defendant Gentex "is an 'employer'

under the Pennsylvania Wage Payment and Collection Law," (Doc. 32, at ¶ 76), and that

"Mr. Rogers is due unpaid wages for his earned bonus for year-end 2014." (*Id.* at ¶ 77).

Plaintiffs further allege that "Mr. Rogers, through counsel, has made repeated demands for

payment of wages due and owing," (*Id.* at ¶ 78), but "Gentex has refused to pay the wages

due and owing to Mr. Rogers."[6] (*Id.* at ¶ 79). Defendant seeks dismissal of Count IV on

the theory that Plaintiffs have "no plausible claim of entitlement to a bonus" under the

Employment Agreement. (Doc. 35, at 15). Plaintiffs counter by maintaining that "Gentex

argues that because Mr. Rogers has no contract claim relating to the payment of a bonus,

his WPCL claim fails as well. To the contrary, Count II should not be dismissed; nor should

Count IV." (Doc. 37, at 16).

"The WPCL requires employers, among other things, to pay to employees wages and

agreed-upon fringe benefits in a regularly scheduled manner and by lawful money or check

and to make only lawful deductions from employees' pay." *Williams v. Jani-King of*

---

[6] In Count IV Plaintiffs request "liquidated damages in an amount equal to twenty-five percent of the amount due and owing in accordance with 43 P.S. § 260.10," (Doc. 32, at ¶ 80), as well as "an award of attorneys' fees associated with this action in accordance with 43 P.S. § 260.9a(f)." (*Id.* at ¶ 81).

*Philadelphia, Inc.*, 837 F.3d 314, 319-20 (3d Cir. 2016) (citing 43 P.S. §§ 260.3, 260.4)).

The statute "gives employees the right to institute a civil action to recover wages owed

under the statute." *Id.* (citing 43 P.S. §§ 260.9(a)). Because the Court has concluded that

Plaintiffs have adequately stated a claim for breach of the Employment Agreement in Count

II, it necessarily follows that Plaintiffs have adequately stated a claim for relief under the

WPCL. Accordingly, Defendant's Motion to Dismiss Count IV of the Amended Complaint

will be denied.

## D. Fraudulent Misrepresentation

In Count V of the Amended Complaint Plaintiffs assert a claim for fraudulent

misrepresentation. According to the Plaintiffs, as of December 2014, "Gentex was on notice

that Mr. Rogers planned to leave the company on an undetermined date." (Doc. 32, at ¶

83). Thereafter, "Gentex fraudulently represented to Mr. Rogers on or around mid-January

2015 that the Company did not meet its 2014 profit/revenue targets and therefore, would not

distribute any bonuses for the 2014 calendar year." (*Id.* at ¶ 84). "Mr. Rogers detrimentally

relied upon the fraudulent representations of Gentex concerning bonuses for the 2014

calendar year prior to setting the date for his official termination of the Employment

Agreement." (*Id.* at ¶ 85). In March 2015, Plaintiffs allegedly discovered that "Gentex

fraudulently misrepresented that it did not meet its 2014 profit/revenue targets and awarded

bonuses," (*Id.* at ¶ 87), and that "[b]ut for the fraudulent representation, Mr. Rogers would

have delayed terminating his employment relationship." (*Id.* at ¶ 88). In sum, Plaintiff

alleges that Gentex not only breached the Employment Agreement by failing to award Mr.

Rogers a bonus in year 2014, but that "Gentex intentionally and fraudulently misinformed

Mr. Rogers about the 2014 bonuses to avoid payment" causing Plaintiffs' "significant

damage." (*Id.* at ¶¶ 89-91).

Defendant seeks dismissal of Count V, asserting that the allegations contained in Count

V "lack[] the specificity required by the Federal Rules, fails to allege the necessary elements

of a fraud claim and is based on a false premise." (Doc. 35, at 21-22). Specifically,

Defendant asserts that "Plaintiffs do not describe the nature and subject of the alleged

misrepresentation with the detail required by Rule 9(b)," and "do not identify who allegedly

stated that the company would not pay bonuses for 2014, how the alleged statement was

communicated or where the communication is alleged to have occurred." (Doc. *Id.* at 22-

23). Moreover, Defendant claim that dismissal is necessary because Plaintiffs fail to plead

the necessary elements of common law fraud, namely that Plaintiffs "do not allege that: (1)

the unidentified speaker had knowledge of the purported falsity of any statement concerning

the payment of bonuses; (2) Mr. Rogers was unaware of the truth; or (3) the speaker

intended for Mr. Rogers to act upon the purportedly false representation by delaying his

separation date." (*Id.* at 23). Finally, Defendant seeks dismissal of Count V by noting that,

in accordance with Gentex's Incentive Bonus Policy, "employees must be on 'active status'

at the time bonuses are paid to be eligible for a bonus," and that "Mr. Rogers does not

allege and cannot allege that he was an active status employee during the second half of

2014 and early part of 2015 and therefore he would not have received a bonus even if he had delayed his technical separation beyond the dates set for payment of bonuses." (*Id.* at 24).

"Under Pennsylvania law, a fraudulent misrepresentation claim has six elements: '(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'" *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009) (quoting *Overall v. Univ. of Pennsylvania*, 412 F.3d 492, 498 (3d Cir. 2005)). Where, as here, a party asserts a claim of fraudulent misrepresentation, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard. Specifically, the Rule provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Turning to Plaintiffs' allegations of fraudulent misrepresentation, the Court agrees with the Defendant that Plaintiffs' fraud claim must be dismissed for failure to satisfy Rule 9(b)'s heightened pleading standard. A review of the Amended Complaint reveals that Plaintiffs

fail to identify *any* speaker of the allegedly fraudulent statements. *See Klein v. Gen. Nutrition Co. Inc.*, 186 F.3d 338, 345 (3d Cir. 1999) ("The complaint fails to attribute the statement to any specific member of GNC management. Fed. R. Civ. P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of the allegedly fraudulent statement."). Nor does the Amended Complaint allege all the requisite elements of fraudulent misrepresentation. Nowhere in the Amended Complaint do Plaintiffs allege that the unidentified speaker possessed knowledge of the falsity of the representation, or that the unidentified speaker intended Plaintiffs to rely on the representation. In the absence of allegations of the necessary elements of a fraudulent representation claim, and without sufficient factual allegations to satisfy the "stringent pleading requirements of Rule 9(b)," *Frederico*, 507 F.3d at 200, Count V of the Amended Complaint must be dismissed.

### E. Negligent Misrepresentation

In Count VI Plaintiffs assert a claim for negligent misrepresentation based on the same set of facts identified in Count V of the Amended Complaint. Specifically, that Gentex "negligently represented to Mr. Rogers . . . that the Company did not meet its 2014 profit/revenue targets and therefore, would not distribute any bonuses for the 2014 calendar year." (Doc. 32, at ¶ 94). Defendant seeks dismissal of Count VI on the basis that "Plaintiffs fail to allege the requisite elements of a negligent misrepresentation claim," and "do not allege that the unidentified speaker was aware or should have been aware of the purported falsity of any statement concerning bonuses or intended to induce Mr. Rogers to

move up his departure date." (Doc. 35, at 26). Moreover, Defendant claims that Plaintiffs "do not allege any material facts which might arguably support an inference that the purported speaker (whom they did not identify) had authority to speak for Gentex." (*Id.*).

Under Pennsylvania law, a "[n]egligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bilt-Rite Contractors, Inc. v. The Architectural Studios*, 581 Pa. 454, 466 (2005) (internal citation and quotation marks omitted). Here, a review of the Amended Complaint reveals that Plaintiffs have failed to plead the requisite elements of negligent misrepresentation. Nowhere in Count VI do Plaintiffs allege facts showing that the unidentified speaker made the misrepresentation "under circumstances in which the misrepresenter ought to have known its falsity," or that the unidentified speaker acted "with an intent to induce another to act on it." *Id.* Without such factual allegations, Plaintiffs cannot state a claim for negligent misrepresentation under Pennsylvania law. Therefore, the Court will grant Defendant's Motion to Dismiss Count VI.

### F. Fraud

Finally, Count VII of the Amended Complaint asserts a claim for Fraud. According to the Plaintiffs:

Gentex further engaged in fraudulent misconduct with regard to its misrepresentations, mischaracterization and misclassification of revenues, expenses and products in order

to fraudulently avoid paying proper and appropriate royalties relative to the Chinstrap payments. In effect, Gentex over-attributed expenses to the Chinstrap products and underreported revenues to deprive Plaintiffs of valuable royalty payments. This fraudulent concealment and related misrepresentations and manipulations also caused Option X, LLC significant damage.

(Doc. 32, at ¶ 102). Defendant seeks dismissal of Count VII on three theories. First, that "Plaintiffs fail to allege 'the who, what, when, where and how' of the alleged fraud and therefore fail to satisfy the heightened pleading burden imposed by Rule 9(b)." (Doc. 35, at 27). Second, "Plaintiffs fail to allege the essential elements of a claim for fraud" as "[t]hey do not allege a material misrepresentation, made with knowledge of its falsity, that was in any way relied upon or resulting in specific harm." (Id.). Finally, Defendant maintains that "the claim is barred by the 'gist of the action' doctrine," because where, as here, "the nature of the duty alleged to be breached is contractual, the gist of the action sounds in contract and tort remedies are not available." (Id. at 28).

In order to establish common law fraud under Pennsylvania law, "'a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result.'" *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 225 n.13 (3d Cir. 2008) (quoting *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006)). As discussed in connection with Plaintiffs' fraudulent misrepresentation claim, allegations of fraud are subject to a heightened standard of pleading pursuant to Federal Rule of Civil Procedure 9(b). For the reasons set forth above in connection with

Plaintiffs' fraudulent misrepresentation claim, *supra* at 16-18, Plaintiffs' fraud claim alleged in Count VII also fails for failure to plead the necessary elements of fraud and failure to satisfy Rule 9(b)'s heightened pleading standard.  Accordingly, Defendant's Motion to Dismiss Count VII of the Complaint will be granted.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss.  A separate order follows.

Robert D. Mariani
United States District Judge